IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TITLEMAX OF TEXAS, INC., IVY FUNDING COMPANY LLC, and NCP FINANCE LIMITED PARTNERSHIP, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-cv-1040-S-BN |
| CITY OF DALLAS, | § § | |
| Defendant. | § § | |

### DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

CHRISTOPHER J. CASO
City Attorney

Gary R. Powell
Texas Bar No. 16195500
gary.powell@dallascityhall.com
Senior Assistant City Attorney

Kathleen M. Fones
Texas Bar No. 24050611
kathleen.fones@dallascityhall.com
Senior Assistant City Attorney

Dallas City Attorney's Office
1500 Marilla Street, Room 7DN
Dallas, Texas 75201
214-670-3519 / fax 214-670-0622

Attorneys for Defendant City of Dallas

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 1

III.    SUMMARY OF THE ARGUMENT ................................................................. 6

IV.     ARGUMENT ....................................................................................................... 9

        A.      LEGAL STANDARD FOR INJUNCTIVE RELIEF ............................ 9

        B.      THE AMENDED ORDINANCE IS NOT PREEMPTED BY STATE
                LAW. ...................................................................................................... 9

                1.      The Amended Ordinance Does Not Amount to a Prohibition
                        of a Business Licensed by the State. ......................................... 10

                2.      The Theory of Field Preemption Does Not Apply to a Home-
                        Rule City Under Texas Law. ..................................................... 11

                3.      Conflict Does Not Exist Between the Amended Ordinance
                        and the Texas Finance Code. ..................................................... 13

        C.      THE AMENDED ORDINANCE DOES NOT VIOLATE PLAINTIFFS'
                RIGHTS UNDER EITHER THE TEXAS OR U.S CONSTITUTION DUE
                PROCESS PROVISIONS ...................................................................... 15

        D.      PLAINTIFFS HAVE NOT MADE THE SHOWING REQUIRED FOR A
                PRELIMINARY INJUNCTION ........................................................... 19

V.      CONCLUSION ................................................................................................... 23

CERTIFICATE OF SERVICE .................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Arizona v. U.S.*,
    132 S. Ct. 2492 (2012)................................................................................ 12

*Austin Apartment Ass'n v. City of Austin*,
    89 F. Supp. 3d 886 (W.D. Tex. 2015)...................................................... 22

*BCCA Appeal Grp., Inc. v. City of Houston*,
    496 S.W.3d 1 (Tex. 2016)................................................................ 7, 13, 14

*Big Tyme Investments, L.L.C. v. Edwards*,
    985 F. 3d 456 (5th Cir. 2021) ................................................................ 20, 22

*City of Brookside Village v. Comeau*,
    633 S.W.2d 790 (Tex. 1982).......................................................... 10, 13, 15

*City of San Antonio v. TPLP Office Park Properties, LP*,
    218 S.W. 3d 60 (Tex. 2007)........................................................................ 18, 19

*Dallas Merch.'s & Concessionaire's Ass'n v. City of Dallas*,
    852 S.W.2d 489 (Tex. 1993)...................................................................... 7, 15

*English v. General Elec. Co.*,
    496 U.S. 72 (1990)...................................................................................... 12

*F.C.C. v. Beach Communications, Inc.*,
    508 U.S. 307 (1993).............................................................................. 19, 21

*FM Properties Operating Co. v. City of Austin*,
    93 F. 3d 167 (5th Cir. 1996) .................................................................. 17, 19

*Heller v. Doe*,
    509 U.S. 312 (1993)...................................................................................... 21

*In re Sanchez*,
    81 S.W.3d 794 (Tex. 2002)........................................................................ 11

*Lindquist v. City of Pasadena*,
    656 F. Supp. 2d 262 (S.D. Tex. 2009),
    *aff'd,* 669 F. 3d 225 (5th Cir. 2012)........................................................ 20

*Maryland v. King*,
    567 U.S. 1301 (2012).................................................................................. 25

*Mid-Century Ins. Co. of Tex. v. Kidd,*
    997 S.W.2d 265 (Tex. 1999) ............................................................. 17

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.,*
    760 F.2d 618 (5th Cir. 1985) ........................................................ 9, 10

*PCI Transportation, Inc. v. Fort Worth & Western Railroad Company,*
    418 F.3 535 (5th Cir. 2005) ............................................................. 10

*Planned Parenthood Ass'n of Hidalgo County, Texas, Inc. v. Suehs,*
    692 F. 3d 343 (5th Cir. 2012) .......................................................... 22

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,*
    748 F. 3d 583 (5th Cir. 2014) .......................................................... 21

*RCI Entertainment (San Antonio), Inc. v. City of San Antonio,*
    373 S.W.3d 589 (Tex. App.—San Antonio 2012, no pet.) ............... 10

*Rice v. Santa Fe Elevator Corp.,*
    331 U.S. 218 (1947) ........................................................................ 12

*Shelton v. City of College Station,*
    780 F. 2d 475 (5th Cir. 1985) (en banc) ......................................... 18

*Texas Midstream Gas Services LLC v. City of Grand Prairie,*
    608 F. 3d 200 (5th Cir. 2010) .................................................... 17, 19

*Veasey v. Abbott,*
    870 F.3d 387 (5th Cir. 2017) ........................................................... 25

*Village of Euclid v. Ambler Realty Co.,*
    272 U.S. 365 (1926) ........................................................................ 18

*Walters v. Nat'l Ass'n of Radiation Survivors,*
    468 U.S. 1323 (1984) ...................................................................... 25

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) ........................................................................ 18

## STATE CONSTUTION AND STATUTES

Tex. Const. art. XI, § 5 .................................................................... 6, 10

30 Tex. Admin. Code §§ 1.1–351.104 .................................................. 13

Tex. Fin. Code § 302.001 ...................................................................... 1

Tex. Fin. Code § 393.622(c). ................................................................................ 16

Tex. Fin. Code §§ 393.001–393.628 ...................................................................... 14

Tex. Health & Safety Code §§ 382.001–.510 ......................................................... 13

**CHARTER PROVISIONS AND ORDINANCES**

Dallas, Tex., Code § 50-151.3(d) ........................................................................... 15

Dallas, Tex., Code § 50-151.4 ............................................................................. 5, 6

Dallas, Tex., Code § 50-151.6 ................................................................................ 5

<u>**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS'**</u>
<u>**MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT:

The City of Dallas (the "City" or "Defendant") files this brief in opposition to Plaintiffs' Motion requesting a preliminary injunction to enjoin and prohibit the City from enforcing a lawfully enacted and valid City ordinance that Plaintiffs erroneously assert is in violation of state and federal law.

## I.      INTRODUCTION

Ordinance No. 31747 (the "Amended Ordinance") is a valid and proper exercise of the City's authority as a home-rule city to protect the general and economic welfare of its low-income residents and is not in conflict with state law. Furthermore, the City has a legitimate governmental interest in seeking to protect low-income persons from financial exploitation by predatory lenders charging loan fees, broker fees, and commission charges that often exceed 200%-300% APR – in addition to the interest charged to the borrower on the small loan. The Amended Ordinance, therefore, is rationally related to the City's legitimate governmental interest in protecting low-income consumers from financial exploitation and does not violate the due process provisions of either the Texas or U.S. Constitutions.

## II.      BACKGROUND

Texas state law limits and regulates the amount or rate of interest a lender can charge and collect on loans to the maximum amount of 10% a year, except as otherwise provided by law. *See* Tex. Fin. Code § 302.001. Ancillary to the business of making small loans to low-income consumers, who represent higher credit risks, loan brokers, loan arrangers, and credit enhancers (like TitleMax) have developed a practice of getting involved in short-term loans to low-income consumers to facilitate the loans. The charges, fees, and assessments charged by these loan brokers

and credit enhancers are not controlled or capped by the state as interest rates are. Consequently, with short-term loans to low-income borrowers, it is fairly common that loan brokers, loan arrangers, or credit enhancers like TitleMax charge and collect service charges and fees that exceed 200% APR on a short-term loan, whereas the lender charges and collects interest on the loan at the rate of 10% per year or less. These additional fees and charges made by loan brokers and loan arrangers create a heavy financial burden on low-income borrowers and cause a significant risk that these low-income borrowers will become mired or stuck in a cycle of debt and re-financing, which leads to additional service fees and charges and heightened risk that low-income borrowers will default and lose their vehicles, which could further exacerbate their financial distress as they lose the means to go to work and transport their families.

A sample loan to low-income consumers is shown by a "Cost Disclosure" obtained from TitleMax's website. (*See* City App'x at 1.)  The Cost Disclosure illustrates an auto title loan in the amount of $1,250 to be repaid in 5 payments. On the sample loan illustrated in the disclosure, the interest paid to the lender at the rate of 9.95% per annum is $52.46. By comparison, the fees payable to TitleMax on this loan is $1,108.80 or an APR cost of credit at the yearly rate of 211.08% APR. On the sample loan of $1,250, the borrower is required to repay a total of $2,411.26 if paid on time over five months. The TitleMax "Cost Disclosure" provides for monthly payments of $215.16 per month for the first four months, with a final payment due in the fifth month of $1,550.62. If the borrower does not pay on time or requests to extend the loan repayment date, the fees and charges increase dramatically. Many borrowers also lose their vehicles to repossession when they are unable to repay the loan in full, including the predatory fees and charges in excess of the interest charges.

TitleMax's "Texas Schedule of All Fees Effective June 2019 (hereinafter "Schedule of Fees") obtained from TitleMax's website shows how oppressive and predatory TitleMax's credit services fees are for low-income borrowers. (*See id.* at 2-23.) As an example of TitleMax's disturbingly high charges the Schedule of Fees at page 4 of the City's Appendix shows that, on a 30-day loan in the amount of $533.00 secured by an auto title as collateral, TitleMax charges a CSO fee of $101.21 whereas the lender interest is only $5.19, so the total of the repayments is $639.40, representing an APR of 242.88%. (*Id.* at 4.)

On a 30-day loan of $1,233, TitleMax charges a CSO fee of $221.82 whereas the lender charges interest of only $11.90 so the total repayment is $1,466.71 representing an APR of 230.62%. (*See id.*)  On a 5-month secured loan in the amount of $1,033, TitleMax charges a CSO fee of $917.30 which far exceeds the $42.24 in interest charged by the lender. The total repayments by the borrower on the 5-month loan is $1,992.54 representing an APR of 219.93%. (*See id.* at 6-7.)

The CSO fees and charges TitleMax extracts from its low-income borrowers on unsecured personal loans are much higher and more disturbing. For example, TitleMax's Schedule of Fees shows that on a personal unsecured loan of $500 over a 140-day term, the CSO fee is $1,246, whereas the interest paid to the lender is only $19.08. (*See id.* at 13-14.) The total of repayments by the borrower on the $500 loan over a 140-day term is $1,765.08 representing an APR of 650.90%. (*Id.*)

A review of TitleMax's Schedule of Fees covering other loan amounts and different durations of personal unsecured loans show a clear pattern where the cost of the loan is 500%-600% APR even excluding the interest paid.  (*See id.* at 15-22.)  The interest portion of the loan repayment is generally less than 10% of the fees charged to the borrower, whereas the

overwhelming majority of the fees charged to the low-income borrowers are the TitleMax CSO fees and charges.  The table below shows the ratio of the interest charges made by the lender compared to TitleMax's CSO fees and charges on various unsecured personal loans.

| Loan Amount | Interest | CSO Fees | APR | Appendix Pg. |
|---|---|---|---|---|
| $500 | $19.08 | $1,246.00 | 650.90% | 13-14 |
| $500 | $19.08 | $996.80 | 522.14% | 14-15 |
| $1,500 | $57.25 | $3,738.00 | 650.90% | 15 |
| $1,500 | $57.25 | $2,990.40 | 522.14% | 15-16 |
| $500 | $20.45 | $1,335.00 | 655.55% | 16-17 |
| $500 | $20.45 | $1,068.00 | 525.35% | 17-18 |
| $1,500 | $61.34 | $4,005.00 | 655.55% | 18 |
| $1,500 | $61.34 | $3,204.00 | 525.35% | 19 |
| $500 | $20.85 | $1,882.55 | 659.21% | 19-20 |
| $500 | $20.85 | $1,089.36 | 528.54% | 20-21 |
| $1,500 | $62.56 | $4,085.10 | 659.21% | 21-22 |
| $1,500 | $62.56 | $3,268.08 | 528.54% | 23 |

(*See id.* at 13-22.)  As is readily apparent from the above table, the disturbingly large amount of CSOs fees and charges dwarf the interest charges on the loans depicted in TitleMax's Schedule of Fees.

In order to protect low-income consumers from such predatory tactics and charges, Dallas adopted the Amended Ordinance, which is codified at Dallas City Code Chapter 50, Article XI ("Article XI"). The original version of Article XI was adopted in 2011 (the "2011 Ordinance"). The Dallas City Council (the "City Council") later determined that the 2011 Ordinance did not provide sufficient protection to low-income borrowers against predatory charges and assessments made by loan brokers and arrangers like TitleMax.  Consequently, in January 2021, the City Council adopted the Amended Ordinance, amending Article XI.

As discussed above, Texas law provides limits on the interest rate that lenders can charge to borrowers on short-term loans, but loan brokers, arrangers, and credit enhancers like TitleMax take the position that they are not charging interest and, therefore, that their charges to borrowers

are not limited to any specific cap by Texas state law. Section 50-151.6(b) of the Dallas City Code states: "The sum of all valuable consideration, fees, or other charges owed by the consumer to the credit services organization may not exceed 0.1 percent per day of the outstanding balance of the extension of consumer credit." Dallas, Tex., Code § 50-151.6(b). Under the Amended Ordinance, therefore, a credit services organization ("CSO") that obtains or arranges for a consumer a loan covered by Article XI or provides advice or assistance to a consumer to obtain the loan cannot make charges of more than 36.5% APR on the loan amount. Before adoption of the Amended Ordinance, organizations such as Plaintiffs were able to charge and collect services or broker fees and charges of 200%-300% APR (or even more) on consumer loans to low-income consumers. The provision of the Amended Ordinance limiting the charges to no more than 0.1 percent per day does not regulate or limit the amount of interest the lender may lawfully charge a consumer. Texas state law regulates the interest charges a lender can make to a borrower. The Amended Ordinance is designed and intended to limit and control the excessive ancillary credit charges and fees charged by credit brokers, credit arrangers, and credit enhancers like TitleMax from being extracted from borrowers at predatory and abusive rates.

Another provision of the Amended Ordinance, section 50-151.4(d)(1) provides that any extension of credit that a CSO or credit access business ("CAB") obtains for or assists a consumer in obtaining shall require repayment of the total amount of the extension of credit, including any principal, interest, and fees, valuable consideration, credit access, business fees, and any other charges or costs in installments may not be payable in more than four installments. *Id.* § 50-151.4(d)(1). Subsection (d)(2) provides that proceeds from each installment payment must be used to repay at least 25% of the total amount of the transaction, including the principal, fees, interest, business fees, services fees, and any other charges or costs that the consumer owes on the loan

transaction. *Id.* § 50-151.4(d)(2). This provision is designed and intended to protect the consumer from becoming stuck in a cycle of debt with high charges and fees where the consumer struggles to catch up and pay the amount owed with a large balloon payment at the end of a few months after the loan is made. These provisions of the Amended Ordinance, addressing the timing and duration of repayment of these short-term loans, is not in direct conflict with or contrary to any provision of Chapter 393 of the Texas Finance Code. The repayment term of 4 months has a rational basis as it is designed and intended to require lenders and induce low-income consumers to structure these very expensive loans in such a way that these predatory loans and the attendant expensive fees and charges are paid off relatively promptly so that a low-income borrower is less likely to become mired in a cycle of expensive debt and re-financings which could further escalate the charges and further oppress and cause dire economic hardship for low-income borrowers.

## III.     SUMMARY OF THE ARGUMENT

The Plaintiffs have not met the elements to show that they are entitled to a preliminary injunction.  First and foremost, they have not established a substantial likelihood that they will prevail on the merits of either their preemption or their due process and due course of law claims. Texas Finance Code does not preempt the Amended Ordinance with unmistakable clarity, and there is a reasonable construction that would leave both the Finance Code and the Amended Ordinance in effect. As a home-rule city, Dallas has the full power of self-government under the Texas Constitution. *See* Tex. Const. art. XI, § 5. Home-rule cities have broad discretionary powers to enact ordinances pursuant to their police powers to protect and further the general welfare of their residents. An ordinance enacted by a home-rule municipality to protect the general welfare of residents is presumed to be valid, and the party challenging an ordinance bears a heavy burden to show that the ordinance is invalid. Home-rule cities do not look to the state Legislature for grants of power, but only for limitations on their authority. *See BCCA Appeal Grp., Inc. v. City of*

*Houston*, 496 S.W.3d 1, 7 (Tex. 2016). A home-rule city like Dallas derives from the Texas Constitution its police powers and authority to enact ordinances. When the Texas Legislature intends to bar home-rule cities from legislating or adopting ordinances in an area, it must do so with unmistakable clarity. *Dallas Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 491 (Tex. 1993). A municipal ordinance and a state statute will not be held repugnant or in conflict if there is any other reasonable construction where both provisions can be reconciled and given effect. *BCCA Appeal Grp.*, 496 S.W.3d at 7.

Although in the federal system, state law may be found to be preempted by federal law when a federal statutory or regulatory scheme is so pervasive and extensive that the federal government has exercised exclusive or preemptive power over an entire field of law or subject of regulation (also referred to as "field preemption"), Texas law does not provide for field preemption of city ordinances by state laws. In fact, as discussed above, Texas law is clear that, for an ordinance enacted by a home-rule city to be preempted, the preemption must either be expressly stated by the Legislature or arise because the home-rule ordinance is irreconcilably in conflict with the state statute such that there is no reasonable construction that can give both effect. Due to the very broad powers conferred on home-rule cities by the Texas Constitution an ordinance enacted by a home-rule city can be preempted by a state statute only where there is a direct conflict between the two provisions or the Legislature's intention to preempt ordinances regarding the subject matter is expressly stated by the Legislature. Field preemption does not apply in this case.

Nothing in Chapter 393 of the Texas Finance Code explicitly states that the Legislature intended to exercise exclusive control over regulation of CABs and CSOs or that municipalities are prevented from enacting any ordinances regulating CABs and CSOs. Furthermore, Plaintiffs have not shown that there is no reasonable construction that would leave both the Amended

Ordinance and the Finance Code in effect.  State law is considered a floor upon which a home-rule city can build, so long as the City's ordinances do not directly and unmistakably conflict with state law.

Section 393.622(c) of the Texas Finance Code bars state regulators from establishing limits on the fees charged by CABs. This section makes it clear that the Legislature knew how to write expressly preemptive instructions if preemption is intended. If the state had intended home-rule cities to be barred as state regulators are barred, the Legislature would have included cities in the prohibition found in section 393.622(c).  The Amended Ordinance functions alongside these state laws, not in opposition to them. The Amended Ordinance and provisions of the Texas Finance Code function side by side and can be harmonized and viewed as complementary, so the Amended Ordinance must remain in force.

Furthermore, the Amended Ordinance does not violate the "due course of law" clause of the Texas Constitution or the due process clause of the U.S. Constitution because the Amended Ordinance is rationally related to advancing a legitimate governmental interest, specifically to assist low-income borrowers and limit the abusive and predatory terms of loan broker fees, assessments, and charges and mandate repayment terms that limit the duration of repayment obligations and hasten repayment of this expensive form of credit. Where an ordinance, like the Amended Ordinance, is rationally related to a legitimate governmental interest, it satisfies substantive due process; consequently, a challenge to the constitutionality of the Amended Ordinance should be rejected.

Plaintiffs have not satisfied their burden of proof, and therefore, are not entitled to a preliminary injunction suspending enforcement of the Amended Ordinance, because Plaintiffs have to failed to satisfy each of the four criteria to obtain a preliminary injunction. Plaintiffs have:

1) failed to show a substantial likelihood of success on the merits of their attack on the Amended Ordinance; 2) failed to show that granting the preliminary injunction will not disserve the public interest; 3) failed to show that the injury to Plaintiffs if the injunction is denied is greater than the harm to others if the injunction is granted and the Amended Ordinance is enjoined; and 4) failed to show a substantial threat of irreparable injury pending trial. Accordingly, because they have not established any of the elements to obtain preliminary injunctive relief, Plaintiffs' request for a preliminary injunction enjoining enforcement of the Amended Ordinance should be denied.

## IV.    ARGUMENT

### A.    LEGAL STANDARD FOR INJUNCTIVE RELIEF

To obtain a preliminary injunction, a plaintiff must establish: (1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *See, e.g.*, *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). "A preliminary injunction is an extraordinary remedy which should only be granted if the movant has clearly carried his burden of persuasion on all four factors." *Id.* It is also the plaintiff's burden to introduce sufficient evidence to justify the grant of a preliminary injunction. *PCI Transportation, Inc. v. Fort Worth & Western Railroad Company,* 418 f.3 535, 546 (5TH Cir. 2005). A decision to grant a preliminary injunction should be treated as the exception and not the rule. *Mississippi Power & Light*, 760 F.2d at 621.

### B.    THE AMENDED ORDINANCE IS NOT PREEMPTED BY STATE LAW.

Plaintiffs do not have a substantial likelihood of success on the merits with respect to their assertion that the Amended Ordinance is preempted by state law. When considering the validity of a city ordinance, a court is to presume the ordinance is valid. *City of Brookside Village v.*

*Comeau*, 633 S.W.2d 790, 792 (Tex. 1982). The burden of showing that a city ordinance is invalid rests solely on the party attacking it. *RCI Entertainment (San Antonio), Inc. v. City of San Antonio*, 373 S.W.3d 589, 595 (Tex. App.—San Antonio 2012, no pet.). Home-rule cities, like Dallas, have the full authority of self-government conferred by the Texas Constitution. *See* Tex. Const. art. XI, § 5. This Court must, therefore, determine not if the Legislature has made a specific grant of authority to allow a home-rule city like Dallas to enact ordinances in the subject area. Instead, this Court should determine only whether the Texas Legislature has limited the power of home-rule cities to enact ordinances in this area. *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002). In fact, when the Legislature decides to preempt a subject matter to prevent a home-rule city from enacting ordinances relating to a particular area, the Legislature must communicate its preemptive intent with unmistakable clarity. *Id.* Here, the Amended Ordinance is not preempted because it is not in direct conflict with Texas law. There is a reasonable construction leaving both the Amended Ordinance and state law in effect, so the Amended Ordinance is not preempted.

### 1. The Amended Ordinance Does Not Amount to a Prohibition of a Business Licensed by the State.

The Amended Ordinance does not preclude or prohibit the operation of a business licensed by the State. The Amended Ordinance merely places reasonable limits (36.5% per annum of the loan amount) on the charges TitleMax and its similarly situated loan brokers and arrangers can charge to their low-income borrowers. This limit does not include the interest charged and collected by the lenders (which generally is capped by the State at 10% per annum). The lenders in these small short-term loan transactions are operating their respective businesses with a cap of 10% per annum in place. The cap or limit the Amended Ordinance places on the loan brokers and loan arrangers (like TitleMax) is more than three and a half times higher than the cap for the lenders. TitleMax is not prohibited from operating its business under the Amended Ordinance.

TitleMax is simply unhappy with the Amended Ordinance because it reduces TitleMax's predatory rates of return on the small short-term loans TitleMax brokers and arranges. The table at page 4, *supra*, shows the disturbingly high rates TitleMax charges for its loan brokerage and loan arranging services – unless restrained by the Amended Ordinance. Many businesses involved in the business of making loans can conduct their businesses successfully with rates less than 36.5% per annum. TitleMax is not precluded or prohibited from operating its business in the City if it chooses to do so.

2. **The Theory of Field Preemption Does Not Apply to a Home-Rule City Under Texas Law.**

Plaintiffs assert that the entire subject matter of the Amending Ordinance is preempted by Chapter 393 of the Finance Code because it "sets out detailed requirements and restrictions on the operations of CSOs . . . and CABs" (Pl. Br. at 16), essentially asserting that the City is barred from regulating in this area due to field preemption.  The doctrine of field preemption is derived from federal case law and is found when the United States Congress intends a federal statutory or regulatory scheme to occupy an entire field exclusively, thereby entirely precluding state regulation of that field's subject matter. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). This intent can be manifested through explicit statutory language or implied by the pervasiveness and complexity of the federal law or regulations in question. *Id*.; *English v. General Elec. Co.*, 496 U.S. 72, 79-80 (1990). As an example, the United State Supreme Court found in 2012 that the federal government possesses exclusive authority to regulate the field of alien registration, thus foreclosing state regulation in the same area. *Arizona v. U.S.*, 132 S. Ct. 2492, 2499–50 (2012).

The relationship between Texas home-rule cities and the State government is not the same as the relationship between a sovereign state and the federal government regarding preemption.

Texas courts are authorized to scrutinize city ordinances to determine if a particular city ordinance *conflicts* with state law, otherwise the ordinance stands unless expressly preempted by the Legislature. Consequently, the doctrine of field preemption is not applicable to the relationship between a home-rule city's ordinances and Texas statutes.  *See BCCA Appeal Grp.*, 496 S.W.3d at 25 (Boyd, J., dissenting in part) ("[C]ity ordinances are not subject to state-law 'field preemption'…even if the Legislature intended to 'occupy that field' of law."); *Comeau*, 633 S.W.2d at 796. The City has found no instance where a Texas court has applied the doctrine of field preemption to invalidate an ordinance enacted by a home-rule city because the field where the ordinance applied was deemed to be so thoroughly regulated by the state that the field had been preempted such that the local ordinance was nullified even where there was no direct conflict between the statute and the ordinance.

Field preemption does not apply in this situation so Plaintiffs' argument asserting field preemption is wrong and meritless. There is no section within Chapter 393 of the Texas Finance Code expressly stating that the field of CAB or CSO regulation is preempted and exclusively under state control, so any contention of preemption would have to arise by implication. In *BCCA Appeal Group v. City of Houston*, the Texas Supreme Court analyzed a Houston ordinance that addressed the same subject matter as Chapter 382 of the Texas Health and Safety Code. *BCCA Appeal Grp.*, 496 S.W.3d at 10-17. Chapter 382 is the codification of the Texas Clean Air Act of 1967, which operates in conjunction with rules promulgated by the Texas Commission on Environmental Quality to regulate a staggering number of activities relating to environmental protection. *See generally* Tex. Health & Safety Code §§ 382.001–.510; 30 Tex. Admin. Code §§ 1.1–351.104. Even when presented with such a complex and far-reaching statutory framework, the Texas Supreme Court analyzed the Houston ordinance in detail to determine whether it specifically

conflicted with the state regulations and not whether the entire field was preempted by state law. *See BCCA Appeal Grp.*, 496 S.W.3d at 12-25. In other words, there was an obvious opportunity to apply the doctrine of field preemption to the case before it, yet the Texas Supreme Court chose instead to engage in a lengthy conflict preemption analysis to arrive at its ruling. *Id*. Here, Chapter 393 of the Texas Finance Code addresses a single type of business activity within the State and most of the sections of Chapter 393 concern licensing, registration, and disclosure procedures. *See generally* Tex. Fin. Code §§ 393.001–393.628. It thus stands to reason that, if field preemption was not applied to the vastly more comprehensive statutory scheme in Chapter 382 of the Texas Health and Safety Code, Texas courts would similarly not apply the doctrine of field preemption to the far more narrow state regulation of CABs in Chapter 393 of the Texas Finance Code. Accordingly, Plaintiffs' arguments that the Amended Ordinance is preempted because the state has comprehensively occupied the field of regulating short-term loans under Finance Code Chapter 393 is meritless.

### 3. Conflict Does Not Exist Between the Amended Ordinance and the Texas Finance Code.

Plaintiffs make generalized claims that sections of the Texas Finance Code conflict with the Amended Ordinance such that it should be preempted. In order to prevail on these claims of preemption, Plaintiffs must show that there is no reading or interpretation of the Amended Ordinance where it could co-exist in concert with Chapter 393 of the Texas Finance Code. If there is any reasonable interpretation where the Amended Ordinance can be read as leaving both the ordinance and the state statute in effect, then the Amended Ordinance must be allowed to stand. *Dallas Merch.'s*, 852 S.W.2d at 491. Home-rule cities have broad discretionary powers to enact ordinances provided that no ordinance shall contain any provision in conflict with the Constitution and the general laws enacted by the Legislature. *Id.* at 490 (quoting Tex. Const. art. XI §5). The

Amended Ordinance is not preempted by provisions in the Texas Finance Code. A state statute and a home-rule city ordinance "will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached." *Comeau*, 633 S.W.2d at 796.

When home-rule cities in Texas enact ordinances in areas in which the state has also passed laws, "local regulation, ancillary to and in harmony with the general scope and purpose of the state enactment is acceptable." *Id.* In other words, state law is considered a floor upon which the city can build, as long as the city's ordinances do not unmistakably conflict with state law. *Id.*; *Dallas Merch.'s*, 852 S.W.2d at 490-91.

Section 50-151.3(d) of the Amended Ordinance provides that, in an extension of consumer credit where a CAB assists a consumer in obtaining the credit and where the loan provides for payment in installments, the loan may not be payable in more than four installments and each installment payment must be used to repay at least 25% of the total amount of the transaction including all fees and other charges or costs.  Dallas, Tex., Code § 50-151.3(d). This provision that a borrower must pay all that they owe on a small consumer loan in no more than four installment payments helps to ensure that the low-income consumer swiftly repays this very expensive form of debt in order to avoid or minimize the ill effects of the high fees and loan charges that are part of the structure of these loans.

Plaintiffs attempt to read into the Texas Finance Code the idea that CABs are free to do whatever they wish in regard to the fees that they charge as long as the customer agrees and these service fees are disclosed. However, not only does the Texas Finance Code not give any such free rein to Plaintiffs and other CABs, but it specifically makes the assessment of fees subject to other laws, like ordinances enacted by the City. Texas Finance Code § 393.602(b) states in part: "A credit access business is permitted to charge amounts allowed by other laws, as applicable." Tex.

Fin. Code § 393.602(b). This quoted provision appears to contemplate that the service fees that a CSO or CAB may charge may be regulated by local ordinances – such as the Amended Ordinance.

Finally, section 393.622(c) of the Texas Finance Code undermines Plaintiffs' argument that Plaintiffs and their industry are so comprehensively regulated by the Office of Consumer Credit Commissioner and the Finance Commission that city ordinances regulating in this area should be deemed preempted and nullified.  That section states:

> Nothing in Section 393.201(c) or Sections 393.601-393.628 grants authority to the finance commission or the Office of Consumer Credit Commissioner to establish a limit on the fees charged by a credit access business.

Tex. Fin. Code § 393.622(c).

The above-quoted section makes it clear that the Legislature knew how to write expressly preemptive instructions or provisions to exempt a business-type from regulation by any governmental entity. If the Legislature had intended for cities to be barred from enacting ordinances to regulate the predatory charges and fees charged by entities like TitleMax, the Legislature obviously knew how to do so. In fact, all it would have taken is to add to the above quoted phrase, "or any municipal government," thereby prohibiting any city from establishing a limit on fees charged for arranging or brokering these small consumer loans. The doctrine of *expressio unius est exclusion alterius* thus supports the conclusion that the City acted within its powers as a home-rule city when it enacted ordinances limiting the fees and charges loan brokers and arrangers could extract from low-income borrowers. *See Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 273-74 (Tex. 1999).

### C.    THE AMENDED ORDINANCE DOES NOT VIOLATE PLAINTIFFS' RIGHTS UNDER EITHER THE TEXAS OR U.S CONSTITUTION DUE PROCESS PROVISIONS

A governmental action, such as a municipal ordinance is generally presumed to be valid and constitutional, consistent with procedural and substantive due process when the ordinance is

rationally related to furthering a legitimate governmental interest. *FM Properties Operating Co. v. City of Austin*, 93 F. 3d 167, 174-75 (5th Cir. 1996) ("The question is only whether a rational relationship exists between the policy [or ordinance] and a *conceivable* legitimate governmental objective." "If the question is at least debatable, there is no substantive due process violation." – emphasis in original). Texas law presumes that ordinances enacted by a home-rule city are valid exercises of a city's police powers. A challenger must "prove the ordinance is arbitrary or unreasonable in that it bears no substantial relationship to the health, safety, morals or general welfare of the community." *Texas Midstream Gas Services LLC v. City of Grand Prairie*, 608 F. 3d 200, 207 (5th Cir. 2010).  With respect to the Amended Ordinance, the City has a legitimate interest in seeking to protect low-income borrowers from abusive and predatory lending practices and charges. The Amended Ordinance is rationally related to furthering this objective because the Amended Ordinance is designed to limit the charges, fees, and assessments that low-income borrowers can be charged by loan brokers, loan arrangers, credit enhancers, and similar entities ancillary to making small consumer loans to those borrowers. When a city ordinance is challenged as a violation of substantive due process under the Texas and federal constitutions, the ordinance is sustainable against a substantive due process challenge if there is "any conceivable rational basis" for the enactment. *Shelton v. City of College Station*, 780 F. 2d 475, 483 (5th Cir. 1985) (en banc).

The U.S. Supreme Court has instructed that a law will survive a substantive due process challenge if the enactment is rationally related to legitimate governmental objective. *See Washington v. Glucksberg*, 521 U.S. 702, 728 (1997).  Only if such governmental action is clearly arbitrary and unreasonable, having no substantial relation to the public general welfare may the ordinance be declared unconstitutional as a violation of due process. *Village of Euclid v. Ambler*

*Realty Co.*, 272 U.S. 365, 395 (1926). The standard of review applicable to a city's ordinances for purposes of the due course of law provision of the Texas Constitution is similarly whether the ordinance "rationally could have been related to a proper exercise of its police powers." *See City of San Antonio v. TPLP Office Park Properties, LP*, 218 S.W. 3d 60, 65 (Tex. 2007). This is referred to as the "rational relationship standard," under which the city's enactments must be upheld if it is at least fairly debatable the enactments or ordinances are rationally related to a legitimate governmental interest. *Id.*

The City has a legitimate governmental interest in preventing low-income residents from being unduly exploited and oppressed by loan brokers, loan arrangers, and credit enhancers charging very high fees for facilitating small loans. Plaintiffs have suggested several theories why they believe the City enacted the Amended Ordinance – suggesting that all reasons are invalid, irrational, arbitrary, and improper,  but the actual purpose that may have motivated proponents of the Amended Ordinance to act as they did in enacting the ordinance  is irrelevant for rational basis analysis. The question under a rational basis analysis of an ordinance is only whether a rational relationship exists between the ordinance and any conceivable legitimate governmental objective. *See FM Properties Operating Co. v, City of Austin,* 93 F. 3d 167, 174-75 (5th Cir. 1996).

In determining whether a governmental enactment survives rational basis review, the law bears a strong presumption of validity, and those attacking the rationality of the law or enactment have the burden to negative every conceivable basis which might support the law. *See Texas Midstream Gas Services, LLC v. City of Grand Prairie,* 608 F. 3d 200, 207, 469 (5th Cir. 2010). The legislative body is not required to articulate its reasons for enacting a provision, and it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged action actually motivated the enactment.  The scrutiny of an enactment to determine whether is it

supported by a rational basis may be based on rational speculation unsupported by evidence or empirical data and is not generally subject to courtroom fact finding. *See F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314-15 (1993). As long as there is a conceivable rational basis for the official action, it is immaterial that it was not the primary factor in reaching the action – or that the rational basis was not actually relied upon by the decisionmakers or that some other irrational factors may have been considered in arriving at the decision or enactment. *See Big Tyme Investments, L.L.C. v. Edwards*, 985 F. 3d 456 (5th Cir. 2021).

Under a rational basis review a court should accord a governmental decision a strong presumption of validity and should uphold the action or ordinance if there is any reasonably conceivable basis or state of facts which could provide a rational basis for the governmental action or ordinance. The range of rational grounds is not restricted to those articulated at the time the government made its decision or enactment but encompasses all conceivable bases actual or hypothesized. Rational basis review is an extremely lenient standard of review, therefore, attacks on ordinances under rational basis review are rarely successful. *See Lindquist v. City of Pasadena*, 656 F. Supp. 2d 262, 696 (S.D. Tex. 2009), *aff'd,* 669 F. 3d 225 (5th Cir. 2012). The Amended Ordinance is rationally related to a legitimate objective of the City, specifically to protect low-income residents from oppressive, harsh, and predatory charges, fees, and assessments frequently made a part of the loan transaction prior to the enactment of the Amended Ordinance.

The rational basis test seeks only to determine whether any conceivable rational basis exists for an enactment or ordinance. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F. 3d 583, 594 (5th Cir. 2014). Because this rational basis inquiry or examination does not lend itself to an evidentiary inquiry in court, the government is not required to "prove" that the objective of the law or ordinance would be fulfilled or achieved. *Id.* Most legislation and

ordinances deal ultimately in probabilities, and the estimation of the people's representatives that the law or ordinance will be beneficial to the community. *Id.* "A law 'based on rational speculation unsupported by evidence or empirical data' satisfies rational basis review." *Id.* (quoting *Beach Communications*, 508 U.S. at 315). The fact that reasonable minds may disagree on legislation or a governmental enactment suffices to prove that the law has a rational basis. *Id.* There is no least restrictive means component to rational basis review, so even where there is an imperfect fit between the means and the ends or where the enactment is not made with mathematical precision, it can still satisfy rational basis review. *Id.* (citing *Heller v. Doe*, 509 U.S. 312, 321 (1993)). The Amended Ordinance is rationally related to furthering a legitimate City objective. Consequently, the Amended Ordinance is not invalid or unconstitutional under either the due course of law provision of the Texas Constitution or the 14th Amendment due process clause of the U.S. Constitution.

### D.   PLAINTIFFS HAVE NOT MADE THE SHOWING REQUIRED FOR A PRELIMINARY INJUNCTION

Plaintiffs have not made the showing required for a preliminary injunction. A party seeking a preliminary injunction must satisfy each of the four criteria: 1) a substantial likelihood of success on the merits; 2) a substantial threat of irreparable injury if the injunction is not granted; 3) the substantial injury to the movant outweighs the threatened harm to the party against whom the injunction is sought; and 4) granting the injunction will not disserve the public interest. *See Big Tyme*, 985 F. 3d at 463-64; *Austin Apartment Ass'n v. City of Austin*, 89 F. Supp. 3d 886 (W.D. Tex. 2015). A preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements. *Big Tyme*, 985 F. 3d at 464; *Planned Parenthood Ass'n of Hidalgo County, Texas, Inc. v. Suehs*, 692 F. 3d 343, 348 (5th Cir. 2012). As discussed above, Plaintiffs have not shown a substantial

likelihood of success on the merits. If the party requesting a preliminary injunction cannot show a substantial likelihood of success on the merits, the injunction should be denied and there is no need for the court to address the other requirements for a preliminary injunction. *Big Tyme*, 985 F. 3d 456, 464 (5th Cir. 2021).  Therefore, Plaintiffs' request for injunctive relief should be denied solely on that basis, but Plaintiffs also have failed to satisfy the other three elements to obtain preliminary injunctive relief.

In the above sections of the City's response the City has shown that the Amended Ordinance was enacted within and pursuant to the City's police powers as a home home-rule city granted by the Texas Constitution. The Amended Ordinance is not in conflict with, or contrary to, any provision of Chapter 393 of the Texas Finance Code.  The Amended Ordinance is not clearly and with unmistakable clarity preempted by any law adopted by the Texas Legislature—including no provision of the Texas Finance Code. There is no implied preemption of the Amended Ordinance because the doctrine of field preemption urged by Plaintiffs does not apply under Texas law in the relationship between a home home-rule city and laws enacted by the Legislature.

Plaintiffs' contention that the Amended Ordinance was an improper attempt by the City to close the so-called "loophole" in Texas Finance Code Chapter 393 is a red-herring and is a meritless diversion. The City, as a home home-rule city under Texas law, clearly has authority to enact ordinances supplementary to Texas state statutes, unless expressly preempted by the Texas Legislature. Where there is a void in the regulatory coverage of a particular state statue it is appropriate for a home home-rule city to enact a provision to address this void or perceived "loophole" – whether or not such a loophole actually exists.  The Amended Ordinance was enacted to further a legitimate governmental purpose of protecting low-income residents from undue exploitation and oppression by predatory loan charges and practices. The Amended Ordinance is

a legitimate response or effort by a home-rule city to address a problem which significantly adversely impacts a significant number of low-income residents of the City.

Plaintiffs have also failed to show that they are likely to prevail on their contention that the Amended Ordinance is unconstitutional as a violation of the due course of law provision of the Texas Constitution. The Amended Ordinance is rationally and reasonably related to a legitimate governmental interest of the City. The Amended Ordinance is designed and intended to provide some protection and assistance to low low-income consumers/borrowers to limit and reduce the undue oppression and exploitation of these low-income consumers at the hands of the loan brokers, loan arrangers, and credit enhancers which charge exorbitant fees and charges added to the loan balance and in addition to the interest properly charged by the lender.

Plaintiffs place a significant amount of emphasis in their argument on statistics from the Office of the Consumer Credit Commissioner for 2019-2020 which Plaintiffs contend show that the number of low-income loan transactions, borrowings, and defaults decreased significantly in 2020 during the last three quarters of 2020 (as compared to the same period and quarters in 2019) due to the government stimulus funds resulting from the COVID-19 pandemic. Plaintiffs use these apparent statistics from 2020 compared to 2019 to argue the point that there was no need in January 2021 for the City to adopt the Amended Ordinance, because the problem the City sought to address was either getting much better or was improving without need for an ordinance. Plaintiffs' argument and logic is faulty. The need for the Amended Ordinance and the problems it sought to address still existed in 2020, even if on a smaller scale than in 2019. Furthermore, Plaintiffs themselves suggested that the pandemic in 2020 and the federal government stimulus funds provided to low-income consumers greatly reduced the need for the types of loans Plaintiffs make, arrange, and broker to low-income borrowers. However, when the pandemic is no longer a

significant issue and the federal government stimulus funds have greatly diminished or ceased then the same problems will remain for low-income consumers who feel the urgency to seek these high cost oppressive and abusive loans. The problems that have existed for years and which were sought to be addressed by the Amended Ordinance existed long before the pandemic in 2020 and would continue to exist long after the pandemic is over—so it was reasonable and appropriate for the City in January 2021 to enact the Amended Ordinance to attempt to address persistent problems with these high cost predatory loans to low-income consumers who have no bargaining leverage and little political voice except for those persons, governmental entities, and organizations who seek to take up the cause to lessen the exposure of these low-income residents to these abusive charges and fees made by entities like Plaintiffs and particularly to the loan brokers and arrangers such as TitleMax.

As to the third element, Plaintiffs wrongly assert that the City will suffer no harm from the injunction, but this assertion ignores the fact that any time a governmental entity is enjoined by a court from effectuating the laws enacted by representatives of its people, the governmental entity suffers a form of irreparable injury. *See Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (citing *Maryland v. King*, 567 U.S. 1301, (2012); *Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984)). Furthermore, an injunction would disserve the public interest, which also harms the City as it enacted the Amended Ordinance to protect the public. The City Council unanimously voted to enact the Amended Ordinance. The enactment of the Amended Ordinance by the City's elected leaders is the best guidepost to show what is in the public interest. Plaintiffs are clearly motivated by their own financial incentives and seek to enjoin the Amended Ordinance so they can return to their abusive and predatory practices and charges which predated the Amended Ordinance. Enjoining the Amended Ordinance will disserve the public interest and leave

those low-income residents who benefit from the protections provided by the Amended Ordinance to the mercy of the loan brokers, loan arrangers, and credit enhancers who caused the problems sought to be addressed by the Amended Ordinance.  If the Amended Ordinance were to be enjoined, the substantial injury to the low-income borrowers who benefit from the protections provided by the Amended Ordinance and to the City, which has an interest in seeing its laws effectuated, would substantially outweigh any short-term injury to Plaintiffs due to the continued enforcement of the Amended Ordinance. The burdens and harm caused to the City and the public by granting the preliminary injunction weigh in favor of denying Plaintiffs' request for a preliminary injunction.

## V.    CONCLUSION

The City of Dallas, along with other Texas cities (most notably Austin), has determined that CABs, loan brokers, loan arrangers, and similar entities that impose very high charges for their services in connection with a loan to low-income consumers pose a threat to the most vulnerable of borrowers. In response to the ongoing predatory lending practices of such businesses, the city enacted the Amended Ordinance in January 2021. This ordinance was built on the floor of existing state law, erecting new regulations where the state's own regulatory network had left off, protecting the City's low-income borrowers from predatory loan practices. The Amended Ordinance is consistent with the structure envisioned by the crafters of the Texas Constitution who provided for home-rule cities to have broad powers to combat a broad array of challenges to citizens. The existing state statutes in the Texas Finance Code do not conflict with the Amended Ordinance in any way, much less with the requisite unmistakable clarity required in order to render the Amended Ordinance preempted. A reasonable reading of state law and the Amended Ordinance reveals two regulations working in tandem. These laws are not repugnant to one

another. Plaintiffs' request for a preliminary injunction should be denied because they cannot make the required showings necessary to obtain a preliminary injunction.

Therefore, for the reasons stated herein, the City requests that this Court deny Plaintiffs' request for a preliminary injunction without need for an evidentiary hearing.

Respectfully submitted,

CHRISTOPHER J. CASO
City Attorney

*/s/ Gary R. Powell*
Gary R. Powell
Texas Bar No. 16195500
gary.powell@dallascityhall.com
Senior Assistant City Attorney

Kathleen M. Fones
Texas Bar No. 24050611
kathleen.fones@dallascityhall.com
Senior Assistant City Attorney

Dallas City Attorney's Office
1500 Marilla Street, Room 7DN
Dallas, Texas 75201
214-67
+0-3519 / fax 214-670-0622

**ATTORNEYS FOR DEFENDANT
CITY OF DALLAS**

## CERTIFICATE OF SERVICE

I certify that on July 13, 2021, a true and correct copy of the foregoing was served via electronic filing upon the following attorneys of record:

T. Ray Guy
Todd J. Harlow
Ben A. West
Frost Brown Todd LLC
2101 Cedar Springs Road, Suite 900
Dallas, Texas 75201

/s/*Gary R. Powell*
Gary R. Powell