IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TITLEMAX OF TEXAS, INC., IVY FUNDING COMPANY LLC, and NCP FINANCE LIMITED PARTNERSHIP, | § § § § | |
| Plaintiffs, | § § | |
| V. | § | No. 3:21-cv-1040-S-BN |
| CITY OF DALLAS, | § § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER REQUIRING
SUPPLEMENTAL JOINT STATUS REPORT AND
<u>AMENDING INITIAL SCHEDULING ORDER</u>**

Plaintiffs TitleMax of Texas, Inc., Ivy Funding Company LLC, and NCP Finance Limited Partnership filed a Verified Original Petition for Declaratory Relief and Application for Temporary and Permanent Injunctive Relief against the City of Dallas, challenging an amended ordinance concerning Plaintiffs' industry. *See* Dkt. No. 1-3. The City answered in state court and removed this action under 28 U.S.C. §§ 1331 and 1441(a). *See* Dkt. Nos. 1, 1-10. And United States District Judge Karen Gren Scholer referred the removed action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of reference. *See* Dkt. No. 4.

While the Court has denied Plaintiffs' motion for a preliminary injunction under Federal Rule of Civil Procedure 65, *see* Dkt. Nos. 11, 27, 42, a decision that Plaintiffs have appealed, *see* Dkt. No. 44, the Court "retains jurisdiction over matters that are collateral to the appeal, such as the merits of [this] case [since] the appeal

concerns a preliminary injunction," *Frye v. Anadarko Petroleum Corp.*, Civ. A. No. H-17-2289, 2018 WL 5921016, at *2 (S.D. Tex. Nov. 13, 2018) (citing *Farmhand, Inc. v. Anel Eng'g Indus.*, 693 F.2d 1140, 1145 (5th Cir. 1982)).

In that regard, Plaintiffs filed a Motion to Compel directed at requests for production (RFPs) that they served on the City. *See* Dkt. No. 41. The City responded. *See* Dkt. No. 43. The Plaintiffs replied. *See* Dkt. No. 47. And the parties filed the court-ordered joint status report required by the June 8, 2021 Standing Order on Discovery and Other Non-Dispositive Motions [Dkt. No. 9] on January 6, 2022 [Dkt. No. 50] (the JSR), *see also* Dkt. No. 49.

In its responses and objections to the RFPs, the City asserted as to each:

> Judicial review of legislative action – such as a city ordinance adopted by the City Council – should be restricted to examination of the language of the law in question and the official legislative records. *See Sosa v. City of Corpus Christi*, 739 S.W. 2d 397, 404-05 (Tex. App. – Corpus Christi 1987, no writ); *Elijah Group, Inc. v. City of Leon Valley*, SA-08-CV-0907 OG (NN), 2009 WL 774427 at, *1 (W.D. Tex., March 24, 2009) ("The Elijah Group may not discover the subjective knowledge, motive, or mental process of individual council members and … commissioners because such information is irrelevant to the validity/applicability of the ordinance. The Elijah Group may rely on the official minutes, transcripts, and comments made during the meetings, but it may not seek discovery from individual members of the city council and the … commission."). The City believes that Plaintiffs have already been provided with and have access to the "official minutes, transcripts, and comments made during the meetings" pertaining to the Amended Ordinance.

Dkt. No. 50-2 at 3-13 (cleaned up).

And, through the JSR, the parties identify four matters that they urge the Court to determine:

- Whether, on the authority of [*Elijah Group* and *Sosa*], a privilege or immunity exempts all non-public documents in the custody or control

of the City or City Council members from production.

- Whether – [if] the Court concludes that legislative immunity does apply to document production – documents that reflect Council members' subjective knowledge, motive, or mental processes, must nevertheless be produced with such text redacted.

- Whether – again, [if] the Court concludes that legislative immunity does apply to document production – documents evidencing communications to or from City Council members or personnel must nevertheless be produced.

- Whether the City is required to search for and produce hard copy documents from City or Council member files.

Dkt. No. 50 at 2-3.

These matters all concern the application of the legislative privilege – sometimes referred to (but not the same) as legislative immunity. *See Jackson Mun. Airport Auth. v. Bryant,* No. 3:16-cv-246-CWR-FKB, 2017 WL 6520967, at *4 (S.D. Miss. Dec. 19, 2017) ("The doctrines of legislative privilege and legislative immunity are similar, but distinct.").[1]

The JSR further identifies a second set of RFPs and an initial set of interrogatories that Plaintiffs have served on the City. *See* Dkt. No. 50 at 4-5; Dkt.

---

[1] *See also Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 95-96 (S.D.N.Y. 2003) ("Closely related to the concept of legislative immunity is the concept of legislative privilege. Although the two doctrines are often discussed interchangeably, there is one key difference. Legislative immunity entitles a state legislator, in an appropriate case, to the dismissal of all of the claims against him or her in the complaint, much as judicial immunity entitles judges to the dismissal of suits against them arising out of the performance of their judicial functions. Legislative privilege, on the other hand, is not absolute. Thus, courts have indicated that, notwithstanding their immunity from suit, legislators may, at times, be called upon to produce documents or testify at depositions." (citations omitted)), *aff'd,* 293 F. Supp. 2d 302 (S.D.N.Y. 2003).

No. 50-6 But, while this second set of discovery requests implicates the legal issues that the parties identify in the JSR, *see id.*, neither side has filed a motion concerning these requests. Regardless, the Court requires that, by **February 18, 2022**, the parties meet and confer after reviewing this order to determine if they can resolve their dispute as to legislative privilege without further judicial intervention. And, if they are unable to reach agreement, the parties must, by **February 25, 2022**, supplement the JSR by each side submitting a legal brief not to exceed 15 pages and discussing only how the legal discussion set out below applies to this lawsuit.

Specifically, these briefs must (1) explain which law applies to the privilege issue raised; (2) if federal common law applies, explain how the applicable factors should be balanced here, or, if Texas law applies, explain how the outcome should be different under that law; and (3) explain whether the privilege has been properly asserted here and has not been waived.

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

"A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *Hobart v. City of Safford*, 784 F. Supp. 2d 732, 763 (S.D. Tex. 2011) (quoting *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)).

And "Federal Rule of Evidence 501 provides that federal common law of privilege applies in general in federal cases." *Id.* at 764 n.22 (emphasis added); *see, e.g., Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) ("Turning to the Parish councilmembers' claim for legislative privilege, we note that this is an evidentiary privilege, 'governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence.'" (quoting *Perez v. Perry*, No. SA-11-CV-360-OLG 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014) (three-judge court) (citing, in turn, *Rodriguez*, 280 F. Supp. 2d at 93-94))).

The City removed Plaintiffs' case based on a federal question. *See* Dkt. No. 1, ¶ 2. But the operative complaint (the petition filed in state court) alleges violations of federal and state law. *See* Dkt. No. 1-3. And, as to state-law claims, Rule 501 provides that, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 501.

So, while "[t]his rule is easily applied when the case presents only federal claims premised on federal question jurisdiction or state law claims premised on diversity jurisdiction," where "the case involves both federal and state law claims in the same action, the rule itself does not specifically address the situation." *Tonti Mgmt. Co., Inc. v. Soggy Doggy, LLC*, Civ. A. No. 19-13134, 2020 WL 9172077, at *2 (E.D. La. June 25, 2020) (footnotes omitted).

> Although the [United States Court of Appeals for the] Fifth Circuit has not addressed this issue, most other circuit courts have held that federal law of privilege governs determination of *all* privilege issues raised in a federal question case involving pendent state law claims, even where the evidence sought is relevant to a pendent state law claim to which a contrary state privilege law would otherwise apply. These

> courts generally reason that "applying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable," with a preference for the federal rule that favors the admissibility of evidence rather than a state rule that would preclude admission. This conclusion is consistent with the general rule that privileges, as exceptions to the demand for relevant evidence and derogations from the search for the truth, are strictly construed. The vast majority of district courts to address the issue and leading commentators are in accord. That conclusion is also supported by the legislative history and advisory comments to Rule 501. Thus, "the weight of authority among courts that have confronted this issue in the context of discovery is that the federal law of privilege governs even where the evidence sought might be relevant to pendent state law claims."

*Id.* (footnotes omitted); *see also Smith v. Smith*, 154 F.R.D. 661, 671 (N.D. Tex. 1994) ("Although Rule 501 specifies that state law of privilege controls where state law supplies the rule of decision with respect to an element of a claim or defense, the federal law of privilege is paramount 'where the court's jurisdiction is premised upon a federal question, even if the [privilege] is relevant to a pendent state law count which may be controlled by a contrary state law of privilege.'" (quoting *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (per curiam); citing *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992))); *Sprague v. Kroger Tex., L.P.*, No. 4:17-cv-874-O, 2018 WL 6599578, at *1 (N.D. Tex. Dec. 15, 2018) ("This case involves both state law and federal disability discrimination law claims. As such, … federal law governs the law of privilege here." (citing *Smith*, 154 F.R.D. at 671; citation omitted)); *Windsor v. Olson*, No. 3:16-CV-934-L, 2019 WL 77228, at *5 (N.D. Tex. Jan. 2, 2019) ("Other Texas federal courts have persuasively reasoned that federal privilege law applies where a plaintiff raises both federal and state claims and the evidence at issue is relevant to both. *See Guzman v. Memorial Hermann Hosp. Sys.*, Civ. A. No. H-07-

-6-

3973, 2009 WL 427268, at *4-*7 (S.D. Tex. Feb. 20, 2009) (discussing cases). Under the circumstances here, and for the reasons aptly explained by Judge Rosenthal in *Guzman*, the Court concludes that the federal common law of privilege applies in this case.").

In the legal briefs to be provided, if necessary, the parties may argue otherwise, but it appears that – where Plaintiffs raises both federal and state claims and the evidence at issue appears to be potentially relevant to both – the Court must apply the federal common law as to the legislative privilege, even though the privilege as applied under Texas law may offer more protection to members of the City Council and their staffs. *See, e.g.*, *In re Perry*, 60 S.W.3d 857, 859-62 (Tex. 2001); *Clear Lake City Water Auth. v. Salazar*, 781 S.W.2d 347, 349-50 (Tex. App. – Houston [14th Dist.] 1989, orig. proceeding).[2]

> Under federal common law, state and local legislators are absolutely immune from civil liability for their legislative activities. But the [United States] Supreme Court[,] in *United States v. Gillock*, 445 U.S. 360, 373 (1980),] ruled that, in contrast to the privilege enjoyed by federal legislators, there is no absolute "evidentiary privilege for state legislators for their legislative acts." Instead, the Court held that,

---

[2] *Cf. Jackson Mun. Airport Auth.*, 2017 WL 6520967, at *4 ("The Legislators contend that if this case were decided under Mississippi law, they would be completely sheltered from having to produce the requested documents. They may well be correct. Likewise, under federal law, if the Legislators were members of Congress, they would likely be shielded by the Speech and Debate Clause from having to produce the documents requested, as they pertain to 'legislative conduct.' A compelling argument can be made that state legislators should be afforded under federal common law the same protections as federal law provides federal legislators. After all, the law of any given state likely affords state legislators similar protections in state court to those the Constitution provides members of Congress. However, as will be discussed, federal common law in its current form provides state legislators less protection than it does members of Congress." (citations omitted)).

> "where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields." *Gillock* left open the question of when, if ever, state legislators could invoke an evidentiary legislative privilege in civil cases in federal court.
> Following *Gillock*, some courts have applied an absolute evidentiary privilege in civil cases for state and local legislators within the realm of legitimate legislative activity. [While, o]ther courts have held that, in civil cases, "any such privilege must be qualified, not absolute, and must therefore depend on a balancing of the legitimate interests on both sides."

*Hobart*, 784 F. Supp. 2d at 763-64 (citations omitted).

The Fifth Circuit embraces the qualified approach. *See Jefferson Cmty. Health Care Ctrs.*, 849 F.3d at 624 ("'While the common-law legislative immunity for state legislators is absolute, the legislative privilege for state lawmakers is, at best, one which is qualified.' This privilege 'must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'" (quoting *Perez*, 2014 WL 106927, at *2, *1)).

And, "[t]o determine whether the legislative privilege precludes disclosure, a court must balance the interests of the party seeking the evidence against the interests of the individual claiming the privilege." *Perez*, 2014 WL 106927, at *2 (citing *ACORN v. Cnty. of Nassau*, No. CV 05–2301(JFB)(WDW), 2007 WL 2815810, at *2 (E.D.N.Y. Sept. 25, 2007) (citing, in turn, *Rodriguez*, 280 F. Supp. 2d at 96)).

> The court in *Rodriguez* identified five factors to aid in this determination, including: (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.* (citing *Rodriguez*, 280 F. Supp. 2d at 101; *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11-C-5065, 2011 WL 4837508, at *7 (N.D. Ill. Oct. 12, 2011)).

"Courts in the Fifth Circuit examining the extent to which state legislative privilege is qualified have cited *Rodriguez*, or cases stemming from it, as providing the relevant analysis and law" and "have adopted the five *Rodriguez* factors in determining whether legislative privilege applies." *Jackson Mun. Airport Auth.*, 2017 WL 6520967, at *6 (collecting cases).

And "[c]ourts following *Rodriguez* have found that 'the privilege applies to <u>any documents or information</u> that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff.'" *Id.* at *7 (emphasis added; quoting *Hall v. Louisiana*, Civ. A. No. 12-657-BAJ-RLB, 2014 WL 1652791, at *10 (M.D. La. Apr. 23, 2014) (citing, in turn, *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *9-*10)); *see also Harding v. Cnty. of Dall., Tex.*, No. 3:15-cv-131-D, 2016 WL 7426127, at *6, *13 (N.D. Tex. Dec. 23, 2016) (applying the balancing test to disclosure of documents; citing *Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014) (observing, while balancing the privilege against a request for documents and ESI, that "with regard to the fifth factor – the possibility of future timidity among legislators – courts have long recognized that the disclosure of confidential documents concerning intimate legislative activities should be avoided" and that "characteriz[ing] the harm as 'speculative' does not undermine the importance of

preserving confidentiality of communication among legislators, their aides, and their staff members" (footnote omitted))).

> "The privilege ... also applies to any information that would reveal such opinions and motives. This includes any procedures used by lawmakers in the legislative process as well as the identification of any specific legislators that were involved in any particular step in the process." Further, communications between legislators or legislative staff and any third party would not be subject to the legislative privilege.
> If a document meets the requirements of the legislative privilege, the Legislators may properly assert the privilege. Even then, however, because the privilege is qualified, it may be overcome, and production of the document compelled, based upon the Court's weighing of the five *Rodriguez* factors.

*Jackson Mun. Airport Auth.*, 2017 WL 6520967, at *7 (quoting *Hall*, 2014 WL 1652791, at *10).

So, before the Court may balance factors to determine whether documents may be produced, a legislator must properly assert the privilege. "The legislative privilege is a personal one and may be waived or asserted by each individual legislator"; cannot be "assert[ed] or waive[d] … on behalf of another legislator"; and, at least as to Texas state legislators, "neither the Governor, nor the Secretary of State or the State of Texas has standing to assert the legislative privilege on behalf of any legislator or staff member." *Perez*, 2014 WL 106927, at *1 (citations omitted; concluding that, "[s]ince no person entitled to assert any privilege has done so, the pending motion is denied as premature"); *see also id.* at *2 ("As stated above, the legislative privilege is personal. Accordingly, counsel for the State of Texas may not invoke the privilege on behalf of the legislator, legislative aide, or staff member.").

And it seems that the privilege may be waived by communicating with an outside party. *See Perez*, 2014 WL 106927, at *2 ("To the extent … that any legislator,

legislative aide, or staff member had conversations or communications with any outsider (*e.g.* party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents of those specific communications." (citing *Comm. for a Fair & Balanced Map*, 2011 WL 4837508)); *see also Clear Lake City Water Auth.*, 781 S.W.2d at 350-51 ("[T]he privilege is a personal one which cannot be imputed to all officials of a governmental body merely on the basis that one or two members waived it."). *Cf. In re TXU Elec. Co.*, No. 05-01-00489-CV, 2001 WL 688128, at *1 (Tex. App. – Dallas June 20, 2001, orig. proceeding) ("Legislative privilege protects elected officials from judicial interrogation about their subjective mental processes in enacting legislation. It does not, however, grant legislators complete immunity from testifying about facts relevant to a lawsuit. This is particularly true when the lawsuit is brought by a municipality and concerns issues about which its elected officials have direct knowledge. The municipalities in this case specifically named numerous elected officials as persons with knowledge of relevant facts. The municipalities cannot place the actions of their representatives at the center of a lawsuit and then shield those same representatives from all inquiry by invoking legislative privilege." (citation omitted)).

Relatedly, on February 2, 2022, the parties filed an agreed motion to amend the June 8, 2021 Initial Scheduling Order [Dkt. No. 10] (the Initial Scheduling Order) under Federal Rule of Civil Procedure 16(b)(4). *See* Dkt. No. 56.

To meet this standard, parties must show that, despite their diligence, they could not reasonably have met the deadline in the scheduling order. *See S&W Enters.,*

*L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003); *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) ("To show good cause, the party seeking to modify the scheduling order has the burden of showing that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." (internal quotation marks omitted)); *see also Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) ("This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." (citations and internal quotation marks omitted)). *Cf. Puig v. Citibank, N.A.*, 514 F. App'x 483, 488 (5th Cir. 2013) (per curiam) ("[T]o determine whether the district court abused its discretion in finding no good cause to modify its scheduling order, we look to the [party's] diligence in [complying with] the scheduling order's timeline.").

> The parties argue that
>
> good cause exists despite [their] diligence … in actively litigating this case. This matter was removed to this court in May 2021. Since that time, the Parties have pursued discovery, including both written discovery and the subpoena of deposition testimony from relevant non-parties. Unfortunately, disagreement regarding the scope of the initial phase of discovery – related to written discovery – have rendered it unlikely that the Parties will be able to satisfy subsequent discovery and trial preparation milestones by the deadlines set out in the Initial Scheduling Order.

Dkt. No. 56 at 2.

The Court agrees that, for these reasons, good cause under Rule 16(b)(4) exists. And this order should help to facilitate a resolution of the parties' disagreement as to the legislative privilege. Accordingly, the Court AMENDS the Initial Scheduling Order by adjusting the deadlines as set out below. *See* Dkt. No. 56 at 2. But no other requirement in that order is altered.

- Under Federal Rule of Civil Procedure 26(a)(2)(D), a party who intends to offer evidence from an expert witness for any purpose other than "solely to contradict or rebut evidence on the same subject matter identified by another party" must designate the expert witness(es) by **April 22, 2022**. A party who intends to offer expert evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party" must designate the rebuttal expert witness(es) by **May 20, 2022**.

- Any motion challenging, seeking to disqualify, or otherwise related to a designated expert witness or his or her designation or testimony must be filed by **June 17, 2022**.

- All discovery must be initiated in time to be completed by **June 24, 2022**. This includes the use of subpoenas to obtain documents from third parties under Federal Rule of Civil Procedure 45 and the supplementation of discovery responses as required by Federal Rule of Civil Procedure 26(e). (But this order does not relieve any party of the Rule 26(e)(1) obligation to supplement or correct a disclosure or response if the party learns after **June 24, 2022** that, in some material respect, a prior disclosure or response is incomplete or incorrect and the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.)

- Any motion to compel discovery or for a protective order must be filed by the later of (1) **June 10, 2022** or (2) 10 days after the discovery response at issue was served or due to be served. Any other motions that are related to discovery but do not seek to compel or avoid as-yet uncompleted depositions, service of discovery responses, or production of documents or electronically stored information must be filed by **June 29, 2022**.

- Motions for summary judgment or other dispositive motions must be filed by **July 22, 2022**.

- A party must file a motion not otherwise covered by the Initial Scheduling Order as amended by this order by no later than **July 22, 2022**.

SO ORDERED.

DATED: February 3, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE