IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TITLEMAX OF TEXAS, INC., IVY FUNDING COMPANY LLC, and NCP FINANCE LIMITED PARTNERSHIP, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:21-cv-1040-S-BN |
| CITY OF DALLAS, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs TitleMax of Texas, Inc., Ivy Funding Company LLC, and NCP Finance Limited Partnership filed in state court a Verified Original Petition for Declaratory Relief and Application for Temporary and Permanent Injunctive Relief against the City of Dallas challenging an amended city ordinance concerning their industry (the Amending Ordnance). *See* Dkt. No. 1-3. The City answered in state court and removed this action under 28 U.S.C. §§ 1331 and 1441(a). *See* Dkt. Nos. 1, 1-10. And United States District Judge Karen Gren Scholer referred the removed action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of reference. *See* Dkt. No. 4.

Plaintiffs move to exclude the expert opinion testimony of Professor Christopher L. Peterson, who the City retained. *See* Dkt. No. 83. The City responded. *See* Dkt. No. 85. And Plaintiffs replied. *See* Dkt. No. 87.

The Court DENIES Plaintiffs' motion for the following reasons.

**Legal Standards**

As another judge in this district recently laid out,

> Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence. Rule 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the expert's knowledge will assist the trier of fact, and (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case."

*Ramos v. Home Depot Inc.*, No. 3:20-cv-1768-X, 2022 WL 615023, at *1 (N.D. Tex. Mar. 1, 2022) (cleaned up).

"In its gatekeeping role, the Court determines the admissibility of expert testimony based on Rule 702 and [*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993),] and its progeny." *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018), *aff'd*, No. 3:11-cv-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018). Under Rule 702 and *Daubert*,

> [a]s a gatekeeper, this Court must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony. The party offering the expert testimony has the burden of proof, by a preponderance of evidence, to show that the testimony is reliable and relevant.

*Ramos*, 2022 WL 615023, at *1 (cleaned up). And "*Daubert's* general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Applying this analytical framework under Rule 702 and *Daubert*, a "court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 759 (N.D. Tex. 2021).

"First, an expert must be qualified. Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training, or education." *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2022 WL 3019795, at *5 (N.D. Tex. July 29, 2022) (cleaned up). "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Holcombe*, 516 F. Supp. 3d at 679-80 (cleaned up); *accord Arnold v. Allied Van Lines, Inc.*, No. SA-21-CV-00438-XR, 2022 WL 2392875, at *18 (W.D. Tex. July 1, 2022) ("Testimony regarding first-hand, historical perceptions constitutes lay, not expert, opinion testimony."). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Aircraft Holding*, 2022 WL 3019795, at *5 (cleaned up).

And, if the expert is qualified, "Rule 702 charges trial courts to act as gatekeepers, making a 'preliminary assessment of whether the reasoning or methodology

underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Expert testimony must be both relevant and reliable to be admissible." *Hall v. State*, No. CV H-21-1769, 2022 WL 2990912, at *4 (S.D. Tex. July 28, 2022) (cleaned up).

> Expert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue. Federal Rule of Evidence 401 further clarifies that relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without evidence" and "is of consequence in determining the action."

*Id.* (cleaned up). "Relevance depends upon whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). "To be relevant, the expert's reasoning or methodology [must] be properly applied to the facts in issue." *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) (cleaned up).

"When performing [the required gate-keeping Rule 702 and *Daubert*] analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). "Assisting the trier of fact means the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument," but "the helpfulness threshold is low: it is principally ... a matter of relevance." *Id.* at 293-94 (cleaned up).

As to reliability, the required "analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia," and "mandates that expert opinion be

grounded in the methods and procedures of science." *Jacked Up*, 291 F. Supp. 3d at 801 (cleaned up). "Expert evidence that is not reliable at each and every step is not admissible." *Jacked Up*, 807 F. App'x at 348 (cleaned up).

"Expert testimony is reliable if the reasoning or methodology underlying the testimony is scientifically valid." *Ramos*, 2022 WL 615023, at *1 (cleaned up).

"Such testimony must be more than subjective belief or unsupported speculation." *Id.* (cleaned up). "In other words, this Court need not admit testimony that is connected to existing data only by the ipse dixit [– that is, an unproven and unsupported assertion resting only on the authority –] of the expert." *Id.* (cleaned up). "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Holcombe*, 516 F. Supp. 3d at 687 (cleaned up).

"Experts are permitted to rely on assumptions when reaching their opinions," but "those assumptions must have some factual basis in the record and an underlying rationale." *Jacked Up*, 291 F. Supp. 3d at 807-07 (cleaned up). "But there is no requirement that an expert derive his opinion from firsthand knowledge or observation." *Id.* at 801 (cleaned up). More specifically, "[e]xperts are permitted to assume the fact of liability and opine about the extent of damages," and "[a]n expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible." *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. CV H-16-2746, 2018 WL 1877015, at *8 (S.D. Tex. Apr. 19, 2018) (cleaned up).

And Federal Rule of Evidence 703 "permit[s] an expert witness to base his opinion on 'facts or data ... that the expert has been made aware of or personally observed' and to opine [and based his opinion] on inadmissible evidence if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 269 & n.10 (cleaned up). More specifically, courts have concluded that, although a party's damages expert "did not personally observe the facts or data in [another expert's report], as a damages expert, he may rely on hearsay, including other expert reports, in forming his opinions." *ENGlobal*, 2018 WL 1877015, at *11 (cleaned up).

Still, "Rule 702 and *Daubert* require an expert witness independently to validate or assess the basis for his or her assumptions," and "[t]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable," which "requires some objective, independent validation of the expert's methodology." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"Although the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. In the words of the Third Circuit, the suggestion that the reasonableness of an expert's reliance on facts or data to form his opinion is somehow an inappropriate inquiry under Rule 702 results from an unduly myopic

- 6 -

interpretation of Rule 702 and ignores the mandate of *Daubert* that the district court must act as a gatekeeper." *Jacked Up*, 807 F. App'x at 348 (cleaned up).

"In some circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality, but to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.* at 348-49 (cleaned up).

And "[t]he expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"The Court normally analyzes questions of reliability using the five nonexclusive factors known as the *Daubert* factors, [which are: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community]." *Ramos*, 2022 WL 615023, at *1 & n.11 (cleaned up). "But these factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kim v. Nationwide Mut. Ins. Co.*, No. 3:21-cv-345-D, 2022 WL 2670393, at *5 (N.D. Tex. July 11, 2022) (cleaned up).

"The point of this inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Holcombe*, 516 F. Supp. 3d at 674 (cleaned up).

"The Court also does not need to admit testimony based on indisputably wrong facts." *Ramos*, 2022 WL 615023, at *1 (cleaned up). The United States Court of Appeals for the "Fifth Circuit has recognized that [t]he *Daubert* reliability analysis applies to, among other things, 'the facts underlying the expert's opinion,'" and "an opinion based on insufficient, erroneous information, fails the reliability standard." *Jacked Up*, 291 F. Supp. 3d at 802 (cleaned up). "And although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, the existence of sufficient facts ... is in all instances mandatory." *Id.* (cleaned up).

But, "[i]n conducting its analysis, the Court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology." *Ramos*, 2022 WL 615023, at *1 (cleaned up). A motion to exclude is not properly based on an "objection that goes to whether [the proffered expert's] opinion is correct, not whether it is reliable," where "[t]he proponent need not prove to the judge that the expert's testimony is correct, but," rather, "by a preponderance of the evidence that the testimony is reliable." *Aircraft Holding*, 2022 WL 3019795, at *8 (cleaned up).

And, "[e]ven when a court rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable." *United States v. Hodge*, 933 F.3d 468, 477 (5th Cir. 2019), as revised (Aug. 9, 2019) (cleaned up). And, so, "[w]hen the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *ENGlobal*, 2018 WL 1877015, at *8 (cleaned up).

Neither can the Court accept arguments that "urge[] the Court to establish an unattainable goalpost, essentially arguing that each item of expert testimony is unreliable insofar as it fails to conclusively prove [the expert testimony's proponent's] theory of its case or an element of a claim or defense," and thereby "confus[e] admissibility with sufficiency, and sufficiency with certainty." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). That "is not the standard for admissibility," or "even the standard for success on the merits," and "[i]t is not the Court's role, in the context of a *Daubert* motion, to judge the conclusions that an expert's analysis generates; the ultimate arbiter of disputes between conflicting opinions is the trier of fact." *Id.*

"If, however, there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered, the court may exclude the testimony as unreliable." *Kim*, 2022 WL 2670393, at *5 (cleaned up). For example, "the Court may exclude [an expert witness's] analysis if the studies that he relies on are so dissimilar to the facts presented that [the expert witness's] opinions cannot be sufficiently supported by the studies." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up).

"But the notion that expert testimony is only admissible to the extent that it is based on studies of identical individuals under identical circumstances would not only turn the 'flexible' inquiry envisioned under Rule 702 on its head, but such rigid constructions of reliability and relevance would defeat the very purpose of expert testimony: to help the trier of fact understand and evaluate the evidence." *Id.* at 676-77 (cleaned up). And, generally, an opposing party's "doubts about the bases for [an expert's] opinions do not render his opinions so unsupported as to create 'too great an analytical gap' between the evidence he relies on and his opinions." *Id.* at 675 (cleaned up).

The "evidentiary gates [provided by Rule 702 and *Daubert*] exist to keep out error that may impermissibly affect the jury" and "to protect juries from unreliable and irrelevant expert testimony." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 264, 268. But "[t]he court's inquiry is flexible in that [t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up).

And, "[p]articularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role – the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration. Thus, [w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, the rejection of expert testimony is the

exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (cleaned up).

And "[t]he Fifth Circuit has noted that [a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration," and, "[a]ccordingly, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Ramos*, 2022 WL 615023, at *3 (cleaned up).

## Analysis

As explained above, the Court should not, in its gatekeeping role under Rule 702 and *Daubert*, exclude a proffered expert witness's opinion or testimony because (1) it is not correct; (2) it contradicts other expert testimony or relies on a set of facts that conflicts with that relied on by contradictory expert testimony, even if that contradictory expert testimony has been found to be reliable; or (3) it does not conclusively prove the proponent's theory of its case or an element of a claim or defense.

But the party offering the expert testimony bears the burden of proof, by a preponderance of evidence, to show that a qualified expert's testimony is relevant (that is, the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, and the expert's

reasoning or methodology properly can be applied to the facts in issue) and reliable (that is, the testimony is based on sufficient facts or data and is the product of reliable principles and methods).

The Court should exclude expert testimony where (1) the expert cannot bring to the jury, on a matter of relevance, more than the lawyers can offer in argument; (2) the expert testimony is based only on subjective belief or unsupported speculation or is connected to existing data only by the unproven assertion of the expert, resting solely on the expert's authority; (3) there is simply too great an analytical gap between the basis for the expert opinion and the opinion proffered (such as if the studies that the expert relies on are so dissimilar to the facts presented that the expert's opinions cannot be sufficiently supported by the studies); (4) the expert testimony is based on indisputably wrong or erroneous or insufficient facts; (5) the proponent fails to provide some objective, independent validation of the expert's methodology; (6) the source on which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion; or (7) the expert relies on assumptions that have no factual basis in the record or no underlying rationale.

Considering this framework, Plaintiffs open their challenge to Professor Peterson by describing him as a

> prolific expounder on consumer issues in general and so-called "payday" lending in particular, who has been retained by the City to provide opinions as to what the Dallas City Council could have considered bases for its enactment of the [Amending Ordinance] on January 27, 2021. The list of his articles, speeches, books and professional engagements on the subject covers some sixteen single-spaced pages at the end of his Report.

> Professor Peterson has been retained as an expert witness – always on behalf of the consumer or another entity prosecuting litigation or arbitration on behalf of consumers – more than twenty times. Apparently, Dr. Peterson has been accumulating supporting citations for the conclusions now stated in his Report over the course of the past two decades; his Report in this case recycles several pages of prose from earlier reports in other cases in which he served as an expert witness.
>
> Obviously, the articles, opinions, regulatory pronouncements and other sources cited by Professor Peterson in his Report are quite familiar to him, having been accumulated and used in support of his work over the course of more than two decades. As Professor Peterson acknowledged during his deposition, his background knowledge, experience, training, and research were the "foundation" on which Professor Peterson came to arrive at his expert opinions in this case. However, the implicit assumption of his Report and the conclusions expressed therein is that those same authorities were known to members of the Dallas City Council such that they could rely on them in reaching the conclusions proffered by Professor Peterson. That implicit assumption is entirely unsupported and unsupportable. Professor Peterson does not claim that the members of the Council were aware of, let alone that they relied upon, any of the publications and sources cited in his Report. Professor Peterson testified that he did not talk to any members of the Dallas City Council, and he did not review any email communications to or from any Dallas City Council members or staff prior to preparing his Report. Professor Peterson also admitted that he has more information at his disposal than "the average city council member would." The analytical gap between the sources cited in his dozens of footnotes and what could have been known by Council members is simply too great to support his conclusions under Fed. R. Evid. Rule 702. For these reasons, and as further detailed below, the opinions expressed by Dr. Peterson and cited herein should be excluded at trial.

Dkt. No. 83 at 2-3 (citations omitted).

In sum, Plaintiffs appear to challenge Professor Peterson's testimony as irrelevant insofar as he is offering an opinion on what could have been the Dallas City Council's reasons for enacting the Amending Ordinance without showing that those reasons were "known to the Council when they voted to enact the Amending

Ordinance." *Id.* at 4-5 (Each "conclusion by Professor Peterson was preceded by and obviously based on multiple articles, agency regulations, and other publications cited in sixty-two footnotes in the Report. None of those sources identified by Professor Peterson were referred to by Council members in any of the three meetings at which an amendment to the Ordinance was considered; nor was a single source produced in discovery in connection with the multiple communications between Council members and third-party advocates for the amendment. In short, … the referenced opinions as to what the Council *could have concluded* are based on facts and sources not shown to have been known to the Council when they voted to enact the Amending Ordinance."); *see also id.* at 12 (concluding that "Professor Peterson travels a bridge too far when he purports to opine as to what the City Council could have 'reasonably concluded' based on myriad studies, articles, government agency regulations, and other publications absent any evidence whatsoever that any members of the Council had actually read, considered or were even aware of any of those authorities").

The City responds that,

> [a]s is readily apparent from Professor Peterson's expert report which is attached as Exhibit 1 to the Motion to Exclude, Professor Peterson is well qualified to testify to the opinions in his detailed report. Plaintiffs' Motion to Exclude acknowledges Professor Peterson's extensive qualifications on the topic of consumer lending issues pertaining to the sort of high-cost consumer loans made by Plaintiffs at issue in this case. Professor Peterson's testimony shows that there is a rational basis for the ordinance enacted by the Dallas City Council on January 27, 2021 by unanimous vote. Plaintiffs assert that Professor Peterson's testimony and report identifying multiple conceivable reasons which support the enactment of the ordinance are not sufficiently tied to the City Council's actions, but as shown herein, Plaintiffs' contention fails to take into

> account the law governing a substantive due process and rational basis review of an economic regulation which provides that the ordinance can be supported by any conceivable rational basis even if not specifically based on evidence in the record.
> Plaintiffs erroneously claim that the ordinance violates substantive due process as they claim it is not rationally related to a legitimate governmental objective. Professor Peterson's testimony rebuts Plaintiffs' claims. His testimony shows the rational basis for the ordinance and identifies the sort of considerations which a reasonable policymaker or council member would or could consider as a rational basis for the enactment. Professor Peterson's testimony is relevant, reliable, probative and admissible pertaining to the substantive due process issues in this case without regard to whether he can testify from personal knowledge as to the specific various considerations and factors the members of the Dallas City Council considered in arriving at their individual and collective votes in enacting the ordinance.

Dkt. No. 85 at 2-3.

The Court agrees with the City. What the Dallas City Council knew when it enacted the Amending Ordinance, to the extent that bases for Professor Peterson's opinions were not known to the Dallas City Council at that time, is not a reason to exclude Professor Peterson's testimony as to what could be rational bases for the Amending Ordinance, to rebut Plaintiffs' substantive due process claim. That is because the substantive-due-process-violation inquiry turns on a conceivable purpose for – not the actual, motivating purpose behind – governmental action.

As is well established, under the rational basis standard, "courts look for a rational relationship between the regulation and a conceivable governmental interest." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 284 n.10 (5th Cir. 2001) (citing *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174-75 (5th Cir. 1996)).

And, as the Fifth Circuit observed in *FM Properties*, "'the "true" purpose of the [policy], (i.e., the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis. The question is only whether a rational relationship exists between the [policy] and a conceivable legitimate governmental objective.'" 93 F.3d at 174-75 (quoting *Smithfield Concerned Citizens for Fair Zoning v. Twn. of Smithfield*, 907 F.2d 239, 246 (1st Cir. 1990)).

So "[n]o substantive due process violation exists where it is 'at least debatable' that a rational relationship with a conceivable legitimate government interest exists." *Smith v. City of Bastrop*, No. 21-51039, 2023 WL 2890162, at *8 (5th Cir. Apr. 11, 2023) (per curiam) (quoting *Simi Inv. Co., Inc. v. Harris Cnty.*, 236 F.3d 240, 251 (5th Cir. 2000) (quoting, in turn, *FM Props.*, 93 F.3d at 174)).

Applying these standards, at least one federal district court has addressed – and rejected – an argument to exclude expert testimony like the one Plaintiffs advance:

> the court finds that Ludwiczak's opinion is relevant as to M & N's takings and substantive due process claims. Granted, the Town could not have based its conduct upon Ludwiczak's opinion, and Ludwiczak's opinion was not, in fact, the reason for the Town's conduct. Even so, the timing of Ludwiczak's opinion does not render it irrelevant to the character of the Town's actions, or the issue of whether there is a rational basis for the Town's actions. As this court observed:
>> The first step in determining whether legislation survives rational-basis scrutiny is identifying a legitimate government purpose – a goal – which the enacting government body could have been pursuing. The actual motivations of the enacting body are entirely irrelevant .... The second step of rational basis scrutiny asks whether a rational basis exists for the enacting governmental body to

> believe that the legislation would further the hypothesized purpose. The proper inquiry is concerned with the existence of a conceivably rational basis, not whether that basis was actually considered by the legislative body.

*M & N Materials, Inc. v. Twn. of Gurley, Ala.*, No. 5:14-CV-00184-CLS, 2015 WL 12830451, at *4-*5 (N.D. Ala. Oct. 5, 2015) (cleaned up).

To sum up, Plaintiffs' challenge to Professor Peterson is based on their view as to the relevance of his testimony. But, for the reasons set out above, it has been shown by a preponderance of evidence that Professor Peterson's specialized knowledge will help the trier of fact to determine a fact in issue. So his testimony is relevant. And Plaintiffs otherwise fail to advance an argument to show why the Court should exclude his expert opinion testimony.

## Conclusion

For the reasons explained above, the Court DENIES Plaintiffs' Amended Motion to Exclude Expert Opinion Testimony of Professor Christopher L. Peterson [Dkt. No. 83].

SO ORDERED.

DATED: July 24, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE