IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TITLEMAX OF TEXAS, INC., IVY FUNDING COMPANY LLC, and NCP FINANCE LIMITED PARTNERSHIP, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-cv-1040-S-BN |
| CITY OF DALLAS, | § § | |
| Defendant. | § § | |

**CITY'S REPLY IN SUPPORT OF THE CITY'S OBJECTIONS TO THE FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

TAMMY L. PALOMINO
Interim City Attorney

Gary R. Powell
Texas Bar No. 16195500
gary.powell@dallas.gov
Senior Assistant City Attorney

Kathleen M. Fones
Texas Bar No. 24050611
kathleen.fones@dallas.gov
Senior Assistant City Attorney

Dallas City Attorney's Office
1500 Marilla Street, Room 7DN
Dallas, Texas 75201
214-670-3519 / fax 214-670-0622

Attorneys for Defendant City of Dallas

**<u>CITY'S REPLY IN SUPPORT OF THE CITY'S OBJECTIONS TO THE FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

The City of Dallas (the "City" or "Defendant") files this reply in support of the City's Objections, filed on August 18, 2023, (ECF No. 112) to the Findings, Conclusions, and Recommendation of the United States Magistrate Judge issued on July 28, 2023 (ECF No. 109) ("FCR") in accordance with 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b). This Reply is filed in response to Plaintiffs' Response to Defendant's Objections ("Plaintiffs' Response") (ECF No. 115). The City urges that this Court should grant the City's Objections to the FCR and overrule Plaintiffs' Objections to the FCR. The Court should grant the City's Motion for Summary Judgment (ECF No. 90) and Brief in Support of the City's Motion Summary Judgment (ECF No. 91) on all Plaintiffs' claims and theories of recovery, including specifically Plaintiffs' claim under the due course of law clause of the Texas Constitution, so this Court can enter a final judgment ending Plaintiffs' lawsuit.

**I.    The City's stated purpose in enacting the Amending Ordinance confirms the important governmental interest of protecting the welfare of residents and consumers.**

Plaintiffs' Response refers to the City's purpose asserted in this litigation for enacting the Amending Ordinance as being "the post hoc, crafted-for-litigation, generic purpose subsequently adopted by the City's attorneys" (*See* Plaintiffs' Response at 4) suggesting that City's counsel, after the lawsuit was filed, devised a purpose to make the Amending Ordinance more defensible in litigation. However, the purpose for the Amending Ordinance was articulated well before Plaintiffs filed their lawsuit seeking to nullify the Amending Ordinance. The Amending Ordinance when enacted stated: "The purpose of this article is to protect the welfare of the residents and

consumers in the city of Dallas … in an effort to reduce abusive and predatory lending practices." (*See* COD Appx. 097, Sec. 50-144). The City's attorneys in this lawsuit have simply defended the ordinance based on the purpose recited in the ordinance as it existed well before Plaintiffs' lawsuit was filed. The Councilmembers who voted unanimously in favor of the Amending Ordinance, after hearing arguments and comments from speakers affiliated with Plaintiffs, were very concerned about the "abusive and predatory lending practices" sought to be addressed by the provisions of Amending Ordinance, as is evident by the deposition excerpts cited in Plaintiffs' Response at page 4 (*See* ECF No. 115 at 4). The purpose for the ordinance attacked by Plaintiffs is not a "post hoc, crafted-for-litigation generic purpose … adopted by the City's attorneys," contrary to Plaintiffs' assertion. The purpose of the Amending Ordinance is "an effort to reduce abusive and predatory lending practices." (COD Appx. 097). This purpose—to protect consumers from "abusive and predatory lending practices" -- is a weighty and serious governmental interest that outweighs any claimed profitability interest of Plaintiffs. The large amount of profits Plaintiffs claim to have enjoyed prior to the Amending Ordinance are funds extracted from low-income consumers and borrowers who deserve to have some relief from the "abusive and predatory lending practices" the Amending Ordinance was intended to restrict.

II. **Plaintiffs raised no genuine issue of material fact that the Amending Ordinance is so burdensome as to be oppressive in light of the City's governmental interest in enacting the regulation.**

Plaintiffs did not specifically refute the facts recited in the City's brief in support of the City's motion for summary judgment. These facts identify the "governmental interest" which is an essential part of the equation identified in *Patel* to measure whether the enactment is "so burdensome as to be oppressive in light of the governmental interest." *Patel v. Dept. of Licensing and Regul.*, 469 S.W.3d 69, 87 (Tex. 2015).

City's Reply in Support of City's Objections to Findings and Conclusions - 2

Plaintiffs complain that the Amending Ordinance caused "the termination of Plaintiffs' unsecured lending business" (ECF No. 115 at 4) when Plaintiffs decided to cease making unsecured loans because the Amending Ordinance provides that the "fees and charges owed by the consumer (not including the interest charged) … may not exceed 0.1 percent per day of the outstanding balance." (*See* COD Appx. at 096, Sec. 50-151.6(b)). However, this limitation on fees and other charges is not applicable to "a deferred presentment transaction or a motor vehicle title loan." (*See* COD Appx. 096, Sec. 50-151.6(a)). A "deferred presentment transaction" is also commonly referred to as a payday loan. So lenders and loan brokers involved in making payday loans are and were not covered or impacted by the Amending Ordinance's limit on fees and charges. Plaintiffs assert that they did not make payday loans prior to the Amending Ordinance and still do not make payday loans. The limitation on fees and charges in the Amending Ordinance (0.1 percent per day or 36.5% APR) is applicable only to unsecured personal loans and not deferred presentment or payday loans. This limitation is not "so burdensome as to be oppressive in light of the governmental interest" because Plaintiffs could simply avoid the claimed oppressiveness of the limit on fees and charges (which does not cap interest regulated by state law) by making their loans structured in the form of "deferred presentment" or payday loans. Plaintiffs seek to exaggerate the burdensomeness of the cap on fees and charges applicable to unsecured personal loans by claiming that Plaintiffs totally ceased making loans in Dallas, except for auto title secured loans. The Amending Ordinance did not limit or cap the fees and charges on deferred presentment or payday loans, so lenders and loan brokers making those type loans to consumers were not impacted by the fee cap applicable to personal unsecured loans. The limitation on fees and charges in the Amending Ordinance does not apply to auto title secured loans, so Plaintiffs' auto title loans were not impacted.

City's Reply in Support of City's Objections to Findings and Conclusions - 3

Plaintiffs also contend that the Amending Ordinance's requirement that the loan be structured so that the total amount owed is repaid in 4 equal installments with 25% of the total owed being paid in each installment (to avoid a large balloon payment due at the end) is "so burdensome as to be oppressive in light of the governmental interest." However, Plaintiffs have not claimed or shown that this payment structure requirement has caused them to cease making profitable auto title secured loans. Plaintiffs claim that their loan volumes have decreased because the loan payment structure required by the Amending Ordinance makes such auto title secured loans less desirable to consumers. After the Amending Ordinance was enacted, Plaintiffs' evidence shows that they restructured their auto title secured loan product offerings to be single payment loans, rather than the 4 equal installments loan structure called for by the Amending Ordinance. Plaintiffs' purported drop in loan volume after the Amending Ordinance and the restructuring of Plaintiffs' secured title loan product is due to Plaintiffs' single payment auto title loans being less desirable to consumers than loans structured with payments in 4 equal installments. Plaintiffs have failed to make a colorable showing of a genuine issue of material fact that the Amending Ordinance is "so burdensome as to be oppressive in light of the governmental interest." *Patel*, 469 S.W.3d at 87.

As stated in *Patel*, a challenged law must be more than "harsh" or "unreasonable" to rise to the level of being so oppressive that it violates the due course of law clause. *Id.* Rather, "courts must extend great deference to legislative enactments, apply a strong presumption in favor of their validity, and maintain a high bar for declaring any of them in violation of the Constitution." *Id.* at 91. Plaintiffs' evidence, even if accepted as true, would not sustain a finding in Plaintiffs' favor on their due course of law claim, so it is appropriate for the Court to grant summary judgment for the City on all of Plaintiffs' claims and legal theories asserted.

The Texas Supreme Court made clear soon after its decision in Patel that its holding in *Patel* "must remain properly limited to the particular legal framework in which they were made." *See Hegar v. Texas Small Tobacco Coal.*, 496 S.W. 3d 778, 788 n.35 (Tex. 2016). The facts here, even accepting Plaintiffs' evidence as true, are not in any way equivalent to the oppressiveness of the barriers burdening the workers in *Patel*. Plaintiffs failed to establish a genuine issue of material fact sufficient to survive summary judgment that the Amending Ordinance is "so burdensome as to be oppressive in light of the governmental interest." *Patel,* 469 S.W. 3d at 87. Accordingly, the Court should grant the City's objection to the FCR on this issue and should grant summary judgment in the City's favor.

### III. The City timely raised its argument that Plaintiffs have no liberty or property interest entitled to constitutional protection.

Before any substantive due course of law rights attach, a party must have a vested property or liberty interest that is entitled to constitutional protection. *See Klumb v. Houston Mun. Emp. Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015). A constitutionally protected right must be a "vested right" which is something "more than a mere expectancy based upon an anticipated continuance of an existing law." *Id.* (citing *City of Dallas v. Trammell*, 101 S.W.2d 1009, 1014 (Tex. 1937)).

Plaintiffs must show "the deprivation of an interest the due-course clause protects." *See Texas Dep't of State Health Servs. v. Crown Distributing LLC*, 647 S.W.3d 648, 653 (Tex. 2022). The Amending Ordinance does not prevent Plaintiffs from operating, and in fact, Plaintiffs have continued operating for well over 30 months since the Amending Ordinance was enacted in January 2021. The crux of the vested rights analysis is that any right emanating from a mere expectancy based on the continuation of existing law is not a constitutionally guaranteed right. *Klumb*, 458 S.W.3d at 15-16.

City's Reply in Support of City's Objections to Findings and Conclusions - 5

The claimants in *Crown Distributing* asserted that the law they challenged unconstitutionally infringed on their property rights to work and earn a living in violation of the due course of law clause of the Texas Constitution. 647 S.W. 3d at 654. Work-related interests, although sometimes broadly stated as being protected, are not without some limits, and some kinds of businesses may be prohibited altogether. *Id.* The court noted that "some occupational interests exist only because the government has created them or made them available." *Id.* "But to be constitutionally protected, a property interest must be "vested." When an interest is predicated upon the anticipated continuance of an existing law and is subordinate to the legislature's right to change the law and abolish the interest, the interest is not vested." *Id.* at 655. *Crown* noted that constitutionally protected work-related interests are described more narrowly as a right to "engage in any of the common occupations of life." *Id.* at 654.

Plaintiffs' loan brokerage businesses are not one of the "common occupations of life" addressed in *Crown Distributing*. Their so-called right to conduct business freed from the Amending Ordinance is a "mere expectancy based upon an anticipated continuance of an existing law" prior to the Amending Ordinance.

Plaintiffs' Response (at 7) asserts that the City, in its Brief Supporting Motion for Summary Judgment, "for the first time contended that Plaintiffs' interest in practicing their profession was not worthy of constitutional protection." Plaintiffs referred to the requirement that Plaintiffs must show a vested right entitled to constitutional protection as "this late breaking contention." (Plaintiffs' Response at 7.) Plaintiffs' assertion misrepresents the events in this case. In addition to making these arguments in its summary judgment briefing, the City raised the arguments in its Appellee's Brief filed with the Fifth Circuit in March 2022 in opposition to Plaintiffs' interlocutory appeal from the denial of Plaintiffs' motion for a preliminary injunction.

*See TitleMax of Texas, Inc. et al v. City of Dallas*, No. 21-11170, Appellee's Brief, March 28, 2022, at 24-25. Then, during oral argument in the Fifth Circuit on August 3, 2022, the panel questioned whether Plaintiffs had a constitutionally protected liberty or property interest, considering the Texas Supreme Court's decision in *Crown Distributing,* which had issued shortly before the oral argument. The panel requested letter briefs addressing the application of this recently issued decision to the interlocutory appeal. The City's letter brief argued that Plaintiffs cannot and did not establish that they have a protected liberty or vested property interest. City of Dallas Letter Brief to Fifth Circuit Court of Appeals, No. 21-11170, August 8, 2022, at 2.  The City's contention that the Amending Ordinance does not violate a constitutionally protected liberty or property interest of Plaintiffs is not a "late breaking contention" as Plaintiffs claim but is instead an issue raised a year before the City's motion for summary judgment was filed. Plaintiffs' lack of a constitutionally protected property or liberty interest (instead of a mere expectancy) is a major deficit and failing in Plaintiffs' due course of law claim, so that the City is entitled to summary judgment on Plaintiffs' due course of law claim. The City timely raised its assertions. The City's objection to the FCR on this issue should be granted.

IV.     **CONCLUSION**

For the reasons stated in the City's objections filed on August 18, 2023 (ECF No. 112) and in this Reply the City objects that the FCR erroneously concludes: 1) that Plaintiffs have made an adequate showing of a vested interest subject to constitutional protection under the due course of law clause of the Texas Constitution; and 2) that Plaintiffs have made an adequate showing to create a genuine issue that the Amending Ordinance is so burdensome as to be oppressive considering the governmental interest involved. The City objects that the FCR fails to recommend that the Court grant the City's motion for summary judgment on Plaintiffs' claim under the due

course of law clause of the Texas Constitution. The City submits that this Court should reject the portions of the FCR addressing Plaintiffs' due course of law claim under the Texas Constitution, accept the conclusions in the FCR as to all other of Plaintiffs' claims. This Court should grant the City's motion for summary judgment in full, dismissing all of Plaintiffs' claims, and grant to the City such other relief to which it is entitled.

        Respectfully submitted,

        TAMMY L. PALOMINO
        Interim City Attorney

        */s/ Gary R. Powell*
        Gary R. Powell
        Texas Bar No. 16195500
        gary.powell@dallas.gov
        Senior Assistant City Attorney

        Kathleen M. Fones
        Texas Bar No. 24050611
        kathleen.fones@dallas.gov
        Senior Assistant City Attorney

        Dallas City Attorney's Office
        1500 Marilla Street, Room 7DN
        Dallas, Texas 75201
        214-670-3519 / fax 214-670-0622

        **ATTORNEYS FOR DEFENDANT**
        **CITY OF DALLAS**

## CERTIFICATE OF SERVICE

I certify that on September 8, 2023, a true and correct copy of the foregoing was served via electronic filing upon the following attorneys of record:

T. Ray Guy
Todd J. Harlow
Ben A. West
Frost Brown Todd LLC
2101 Cedar Springs Road, Suite 900
Dallas, Texas 75201

/s/*Gary R. Powell*
Gary R. Powell